IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  08-cv-00108-WYD-MEH

ROBERT MONTGOMERY,

      Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF DOUGLAS COUNTY, COLORADO, a
body corporate and politic; and
WESLEY A. RIBER, in his individual capacity,

      Defendants.

---

**ORDER**

---

I.    <u>INTRODUCTION AND BACKGROUND</u>

THIS MATTER is before the Court on the Defendants' Combined Motion for

Summary Judgment and Memorandum Brief in Support Thereof (docket #36), filed

December 31, 2008.  The Defendants' motion seeks summary judgment on Plaintiff's

sole claim alleging a First Amendment violation of retaliation under 42 U.S.C. § 1983.

For the reasons stated below, Defendants' motion for summary judgment is denied.

This action arises from the termination of Plaintiff Robert Montgomery as the

Assistant Chief Deputy Coroner of Douglas County, Colorado.  Plaintiff alleges that he

was terminated on May 29, 2007 in retaliation for his speaking out regarding two

matters, a death investigation Plaintiff believed was a suicide cover-up and an alleged

improper conflict of interest involving the Coroner, Wesley Riber ("Riber") and the Chief

Deputy Coroner, Patricia Dunn ("Dunn").

By way of background and relevant to the motion before me, it is undisputed that on December 23, 2002, Riber hired the Plaintiff as an administrative assistant with the Douglas County Coroner's office.  After a series of promotions, Plaintiff was promoted to the position of Assistant Chief Deputy Coroner.

On or about September 13, 2006, Riber received complaints from both the Colorado Bureau of Investigation and the Lincoln County Coroner regarding Plaintiff's conduct at the scene of a multi-jurisdictional death.  Riber met with Plaintiff concerning his inappropriate conduct.

On October 23, 2006, the Douglas County Coroner's office was contacted concerning the death of Jack Acree.  Coroner Investigator Carrie Fink ("Fink") investigated the death scene where it appeared that Mr. Acree may have had suicidal ideations.  Dr. Galloway, the pathologist who conducts autopsies for Douglas County as an outside contractor, performed an autopsy on Mr. Acree and advised Riber that Mr. Acree died of natural causes due to heart disease.  On or around November 10, 2006, Plaintiff told Fink about his suspicions that Riber may have ruled Acree's death "natural" in order to gain favor with the political community.  Plaintiff spoke to Dunn and told her that he thought Acree's death should have been ruled a suicide, and he thought the level of the drug, Atenolol, in Mr. Acree's system should have been further tested.  In December of 2006, Plaintiff met with Riber and Dunn about his concerns surrounding the Acree case.  Plaintiff also shared his concerns about the Acree death with several employees in the Douglas County Sheriff's office.  On December 5, 2006, a meeting between Sheriff's office personnel, Riber, and Dunn was held to discuss why Dr.

Galloway had not quantified the level of Atenolol in Mr. Acree's system.  Riber advised

that his ruling on the cause and manner of death would remain natural.

With respect to Plaintiff's statements regarding an alleged improper conflict of

interest, Douglas County allows smaller, more rural counties that have no autopsy

facilities to use the Douglas County facilities for a charge.  Dr. Galloway requests the

use of trained autopsy assistants to help him perform these out-of-county autopsies.

Both Riber and Dunn testified that they have assisted Dr. Galloway on several

occasions with these autopsies and have personally received payment from Dr.

Galloway.  On three or four occasions in the year proceeding Plaintiff's termination,

Plaintiff spoke with Dunn about the personal checks that she and Riber had received

from Dr. Galloway in exchange for their assisting with out-of-county autopsies.  It is

disputed when the most recent conversation occurred.

Defendants state that sometime after January of 2007, multiple Coroner's office

employees complained about Plaintiff's interactions with staff, his subordinates, his

supervisory skills, and his inappropriate sharing of personnel matters.  After receiving

these complaints, on May 23, 2007, Riber and Laura Teague ("Teague"), the Douglas

County Human Resources Department Manager, met with Plaintiff to discuss these

issues.  On May 29, 2007, Riber and Teague met with Plaintiff again, and Plaintiff's

employment was terminated.

In his deposition, the Plaintiff testified that his job duties consisted of monitoring

and overseeing investigators' work product, being a liaison between the office and the

Department of Homeland Security, and attending National Institute of Justice Meetings.

(Montgomery Dep. 62:13-25, June 2, 2008.)  Plaintiff also stated that he had

supervisory responsibilities over the investigators.  (Montgomery Dep. 62:22-25.)

Plaintiff further testified that he had "very little" role in death investigations "other than

monitoring the investigators' work product."  (Montgomery Dep. 63:1-4.)  As part of his

official duties, Plaintiff did investigate some deaths on his own and would occasionally

work with Riber and Dunn to discuss case files and receive work product requests.

(Montgomery Dep. 63:5-19.)  Plaintiff stated that only Riber and Dunn had the authority

to determine whether or not to conduct an autopsy.  Once Riber or Dunn decided an

autopsy was to be conducted, Plaintiff's duty was to call Dr. Galloway, the pathologist,

to schedule the procedure.  Plaintiff never provided input as to additional testing beyond

what is performed at every autopsy nor consulted as to cause of death determinations.

(Montgomery Dep. 63:20-66-8.)

 The Douglas County Government Job Description for Assistant Chief Deputy

Coroner provides in relevant part:

> This is a technical and administrative position providing insight and
> supervision related to investigating deaths occurring within the jurisdiction
> of the Douglas County Coroner's office.
> . . .
> Advises Chief Deputy Coroner and Coroner on manpower and personnel
> matters.  Provides review and oversight of case files, judicial filing [sic],
> medical reports and police and/or fire reports.
> . . .
> Determines when autopsies are needed.
> . . .
> Confers with medical, social and law enforcement agencies related to
> investigations.  Supervises preparation of toxicological samples to be sent
> to laboratories.
> . . .
> Makes recommendations for budgeting and expenditures.
> . . .

Reports directly to the Chief Deputy Coroner or Coroner.

(Exhibit A-4; Montgomery Dep. 72:15-77-24.)

In the motion for summary judgment, the Defendants assert that summary judgment should be granted on Plaintiff's claim of retaliation.  Specifically, the Defendants argue that the matters Plaintiff spoke about fall within his official duties as Assistant Chief Deputy Coroner.  The Defendants also state that Plaintiff failed to demonstrate any causal link between his alleged acts of speaking out and his subsequent termination.  Finally, the Defendants briefly argue that Defendant Riber is entitled to the defense of qualified immunity.  I address each argument in turn.

II.   ANALYSIS

A.   Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Employment Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).  "When applying this standard, the court must 'view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment.'"  *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation omitted).  All doubts must be resolved in favor of the existence of triable issues of fact.  *Boren v. Southwestern Bell*

*Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

"[The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323.

  B. <u>Whether Summary Judgment is Appropriate in this Case</u>

    1. <u>First Amendment Freedom of Expression</u>

  In *Pickering v. Bd. of Education of Township High School District 205*, 391 U.S. 563, 574 (1968), the United States Supreme Court held that an employee who speaks on issues of public importance may not be dismissed from public employment.  The analysis is a First Amendment issue "[t]he threshold question in assessing the free speech claim of a discharged . . . government employee is whether the employee has spoken 'as a citizen upon matters of public interest' or merely 'as an employee upon matters only of personal interest.'" *Gardetto v. Mason*, 100 F.3d 803, 812 (10th Cir. 1996) (quoting *Connick v. Myers*, 461 U.S. 138,  147 (1983)).  The United States Supreme Court reiterated that "when public employees make statements pursuant to

-6-

their official duties, the employees are not speaking as citizens for First Amendment

purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006).

In addition, the First Amendment protects only speech that is of a matter of

public concern, and where the speech does not qualify as this, the First Amendment

claim fails. *Gardetto*, 100 F.3d at 812. "Matters of public concern are those which can

'be fairly considered as relating to any matter of political, social, or other concern about

the community.'" *Id.* (quoting *Connick*, 461 U.S. at 146). "While speech pertaining to

internal personnel disputes and working conditions ordinarily will not involve public

concern . . . '[s]peech that seeks to expose improper operations of the government or

questions the integrity of governmental officials clearly concerns vital interests.'" *Id.*

(quotation omitted).

The Tenth Circuit has identified a five-part inquiry to analyze a freedom of

speech retaliation claim by a government employee, known as the *Garcetti/Pickering*

analysis. *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1202 (10th

Cir. 2007). "First, the court must determine whether the employee speaks 'pursuant to

[his] official duties.'" *Id.* (citing *Garcetti*, 547 U.S. at 421). "Second, if an employee

does not speak pursuant to his official duties, but instead speaks as a citizen, the court

must determine whether the subject of the speech is a matter of public concern." *Id.*

"Third, if the employee speaks as a citizen on a matter of public concern, the court must

determine whether the employee's interest in commenting on the issue outweighs the

interest of the state as employer." *Id.* (citations omitted). "Fourth, assuming the

employee's interest outweighs that of the employer, the employee must show that his

speech was a substantial factor or a motivating factor in [a] detrimental employment decision." *Id.* (citations omitted).   "Finally, if the employee established that his speech was such a factor, the employer may demonstrate that it would have taken  the same action against the employee even in the absence of the protected speech." *Id.* (citations omitted).

2.    Whether Plaintiff's Statements Constitute Constitutionally
Protected Speech for First Amendment Purposes

Plaintiff alleges that he was terminated for making statements about both his suspicions of a cover-up surrounding the Acree death investigation and his concerns about the Defendants' improper conflict of interest by accepting money for assisting in out-of-county autopsies.  The Defendants assert that Plaintiff's comments are not constitutionally protected under the holding in *Garcetti v. Ceballos*, *supra*, because Plaintiff made these statements not as a private citizen, but pursuant to his official duties as the Assistant Chief Deputy Coroner of Douglas County, Colorado.  As discussed above, the United States Supreme Court in *Garcetti* held that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and their statements do not receive Constitutional protection.  *Garcetti*, 547 U.S. at 421.  When determining whether a particular statement was made pursuant to an employee's official job duties, the "proper inquiry is a practical one."  *Id.* at 424.  The fact that the speech at issue took place at work or is related to the employee's job is not dispositive, and in some circumstances such speech is still considered public speech and may receive protection.  *Id.* at 420-21. In addition, while the listing of a particular task within an employee's formal job

description might be relevant to this determination, it is not necessary to demonstrate that a task was conducted within the scope of the employee's official job duties.  *Id.* at 424-25.

### The Acree Death Investigation

Prior to his termination, Plaintiff made statements indicating that he believed Mr. Acree's death should have been ruled a suicide, and he thought the level of the drug, Atenolol, in Mr. Acree's system should have been further tested.  According to the Defendants, Plaintiff's statements regarding the alleged Acree suicide cover-up were made as part of his job as Assistant Chief Deputy Coroner.  Defendants argue that Plaintiff's duties included advising on cases, "conducting death investigations, supervising investigations, reviewing cases, and working with the Douglas County Sheriff's office in connection with investigations."  (Mot. Summ. J. 16.)  Defendants further contend that Plaintiff "had knowledge of the Acree investigation only by virtue of his position as Assistant Chief Deputy Coroner."  (Mot. Summ J. 17.)

Plaintiff disputes these assertions and notes that he testified in his deposition that his job duties did not involve decisions regarding toxicology testing or death determinations.  Plaintiff stated that his investigative responsibilities ended when the death determination was made and the file was complete.  (Resp. 26.)  All toxicology decisions were made by Dr. Galloway.  Plaintiff testified that he was concerned about the alleged Acree suicide cover-up not because of his official duties but because he is "a taxpayer."  (Montgomery Dep. 135:25-136:3.)  Plaintiff further insists that his conversation with Dunn about the Acree case did not pertain to official duties, but rather

was in the context of the upcoming Coroner's election.

Based on the record before me, and viewing the evidence in the light most favorable to Plaintiff, I cannot conclude, as a matter of law, that Plaintiff's statements concerning the alleged Acree suicide cover-up by the Coroner's office were made pursuant to his official duties.  During his deposition, Plaintiff testified that he had no official duty regarding toxicology testing or death determinations, which are the subject of the statements at issue.  Plaintiff's statements were likely made in order to raise concerns about unethical or corrupt behavior by the Coroner's office.  "Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of [state] officials, in terms of content, clearly concerns matters of public import."  *Hulen v. Yates*, 322 F.3d 1229, 1237 (10th Cir. 2003).  For these reasons, I find that the Defendants are not entitled to summary judgment on the issue of whether Plaintiff acted as a private citizen when he spoke out about the Acree death investigation and the alleged suicide cover-up pursuant to the holding in *Garcetti v. Ceballos*, *supra*.

Conflict of Interest Involving Riber and Dunn

Prior to his termination, Plaintiff also made statements accusing both Riber and Dunn of an improper conflict of interest by accepting money from Dr. Galloway.  As I previously noted, Dr. Galloway, an outside contractor for the Douglas County Coroner's office, conducted out-of-county autopsies.  Riber and Dunn assisted Dr. Galloway on these out-of-county autopsies and received payment in the form of personal checks from Dr. Galloway.  The Defendants argue that Plaintiff's statements regarding these personal checks were made as part of his job as Assistant Chief Deputy Coroner.

-10-

Defendants contend that it was part of Plaintiff's job to "make recommendations for budgeting and expenditures" and raise financial issues.  (Mot. Summ. J. 18.)

Plaintiff, on the other hand, argues that Plaintiff's job responsibilities do not "extend to objecting to the misconduct of his supervisors."  (Resp. 29.)  I agree. Plaintiff's job duties may have included budgeting and expenditures, but the speech in question was made as a result of Plaintiff's belief that his superiors were involved in an improper conflict of interest.  Plaintiff's speech regarding Riber's and Dunn's acceptance of personal checks from Dr. Galloway bears no relation to Plaintiff's duties involving official budgeting or expenditures.  Under *Hulen*, Plaintiff's statements about the alleged improper conflict of interest implicate matters of public concern.  *Hulen v. Yates*, 322 F.3d at 1237.

Based on the record before me, and viewing the evidence in the light most favorable to Plaintiff, I cannot conclude, as a matter of law, that Plaintiff's statements concerning the alleged improper conflict of interest were made pursuant to his official duties.  For these reasons, I find that the Defendants are not entitled to summary judgment on the issue of whether Plaintiff acted as a private citizen when he spoke out about the alleged improper conflict of interest pursuant to the holding in *Garcetti v. Ceballos*, *supra*.

> 3.   Whether Plaintiff's Statements Were a Substantial or Motivating Factor in Plaintiff's Termination

Next, I address the Defendants' contention that even if Plaintiff could establish that he spoke as a private citizen, he cannot show that such speech was a substantial or motivating factor in any adverse employment action taken against him.  Defendants

assert that Plaintiff's statements at issue were made several months before his termination. Thus, "the causal like is so remote that Montgomery's [Plaintiff's] claims constitute nothing more that mere speculation." (Mot. Summ. J. 22.)  Additionally, the Defendants contend that Plaintiff was terminated due to inappropriate, disruptive, and unprofessional behavior.

It is Plaintiff's burden to show that his speech was a substantial or motivating factor in Defendants' decision to terminate him. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1262 (10th Cir. 2005).  Because this issue involves causation, it is generally a question of fact to be resolved by the jury. *Gardetto*, 100 F.3d at 811.  Here, the Defendants have come forward with evidence that the Plaintiff was terminated for unprofessional behavior, not for his statements regarding the Acree investigation or the alleged conflict of interest.   However, it is disputed as to when the last conversation regarding the speech at issue occurred between the Plaintiff and Dunn.  Additionally, Plaintiff has come forward with evidence that the proffered reasons for his termination are pretext.  Viewing the evidence in the light most favorable to Plaintiff, I find that he has demonstrated that material issues of fact exist that preclude the entry of summary judgment in the Defendants' favor.

C.    Whether Defendant Riber is Entitled to the Defense of Qualified Immunity

1.    Qualified Immunity

"In civil rights actions seeking damages from governmental officials, those officials may raise the affirmative defense of qualified immunity, which protects all but the plainly incompetent or those who knowingly violate the law." *Holland ex rel.*

-12-

*Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir.2001).  Once the defense is raised by a defendant, the burden shifts to the plaintiff to come forward with facts or allegations sufficient to show both "'that the defendant's actions violated a constitutional or statutory right'" and that the right "was clearly established at the time of the defendant's unlawful conduct."  *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (quoting *Albright v. Rodriguez*, 51 F.3d 15531, 1534 (10th Cir. 1995)).  *See also Workman v. Jordan*, 32 F.3d 457, 479 (10th Cir. 1994); *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996).

Thus, in the context of a motion for summary judgment, I must first consider whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [official's] conduct violated a constitutional right?"  *Holland*, 268 F.3d at 1185.  If I determine that there has been a violation of a constitutional right, then I must "ask whether the right was clearly established at the time of defendant's unlawful conduct."  *Id.* at 1186.  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."  *Id.* (internal quotation omitted).  Generally, this means that "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as plaintiff maintains."  *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002).  If the plaintiff successfully establishes the violation of a clearly established right, the burden then shifts to the defendant, who must prove that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law.  *Medina*, 252 F.3d at

1128; *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

### 2.   First Amendment - Retaliation Claim

With respect to this claim, the Plaintiff alleges that his First Amendment rights were violated when he was terminated from his employment as Assistant Chief Deputy Coroner in retaliation for his speaking out.  Plaintiff further argues that "qualified immunity should be denied, because it is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally-protected interest in freedom of speech."  (Resp. 35-36.)

Turning to the first step in the qualified immunity inquiry, I must determine whether "the facts alleged show the [official's] conduct violated a constitutional right?" *Holland*, 268 F.3d at 1185.  After viewing all of the facts in the light most favorable to the Plaintiff, I find that there is at least an issue of fact as to whether Plaintiff was terminated after speaking out about both the Acree death investigation and the conflict of interest involving Riber and Dunn.  As set forth in this Order, I found Plaintiff was speaking as a private citizen, and thus, his statements are protected by the First Amendment.  I further found that there are issues of fact as to whether Plaintiff's speech was the substantial or motivating factor in his termination.  Thus, I find that Plaintiff has satisfied his burden under the first prong of the qualified immunity analysis by showing there was a First Amendment violation.

Turning to the second prong of the qualified immunity analysis, I must determine whether Plaintiff's First Amendment right was clearly established at the time of the violation.  The Supreme Court has held that public employment cannot be conditioned

"on a basis that infringes the employee's constitutionally protected interest in freedom of expression" *Connick*, 461 U.S. at 142.  "[I]t is essential that public employees be able to speak out freely [on matters of public concern] without fear of retaliatory dismissal." *Id.* at 149.

Plaintiff cites to the Supreme Court opinion of *Rankin v. McPherson*, 482 U.S. 378 (1987) to support his argument that his First Amendment rights were clearly established at the time of the unlawful conduct.  In *Rankin*, the Supreme Court stated that "[i]t is clearly established that a State may not discharge an employee on a basis that infringes that employee's constitutionally protected interest in freedom of speech." *Id.* at 383.  The Court went on to say that "[v]igilance is necessary to ensure that public employers do not use authority over employees to silence discourse, not because it hampers public functions but simply because superiors disagree with the content of employees' speech." *Id.* at 384.

I agree with Plaintiff that the *Rankin* case clearly establishes that if Plaintiff was indeed terminated from his employment for his constitutionally protected statements concerning the Acree investigation and the alleged improper conflict of interest, it was a violation of the First Amendment.[1]  Thus, Plaintiff has satisfied the heavy two-part burden to avoid summary judgment based on qualified immunity.  I further find that the Defendants have failed to show that there are no genuine issues of material fact.  As previously noted, I find there are factual issues as to whether Plaintiff's speech was a

---

[1] I note that Defendants do not dispute Plaintiff's contentions with respect to the defense of qualified immunity.  In fact, in their reply, the Defendants do not address the issue of qualified immunity at all.

motivating factor in his termination.  Accordingly, I find that summary judgment is not

proper on Plaintiff's First Amendment claim of retaliation.

III.     CONCLUSION

In conclusion, for the reasons set forth herein, it is hereby

ORDERED that Defendants' Combined Motion for Summary Judgment and

Memorandum Brief in Support Thereof (docket #36), filed December 31, 2008, is

**DENIED**.

Dated:  June 5, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
U. S. District Judge